461 So.2d 288 (1985)
James R. HATCHER, Appellant,
v.
PANAMA CITY NURSING CENTER, INC., a Florida Corporation, Appellee.
No. AX-467.
District Court of Appeal of Florida, First District.
January 8, 1985.
Edwin W. Held, Jr., Fischette, Parrish, Owen & Held, Jacksonville, for appellant.
Steven A. Werber, Commander, Legler, Werber, Dawes & Sadler, Jacksonville, for appellee.
*289 JOANOS, Judge.
Dr. James R. Hatcher has appealed the trial court's final order which granted summary judgment to appellee (defendant in the lower tribunal), and denied Dr. Hatcher's claim for specific performance of an agreement for the sale of Panama City Nursing Center, Inc., to him. The issues that have been raised on appeal are (1) whether the acceptance and negotiation of the return of the earnest money deposit constituted, as a matter of law, a rescission of the contract or terminated the seller's obligations under the terms of the contract; (2) whether under the circumstances of this case equity will allow relief from a principle of law; and (3) whether the trial court erred in granting the seller's motion for summary judgment on the claim for damages. We affirm in part and reverse in part.
Mr. Ronald Langley, president of Panama City Nursing Center, Inc., contracted with Dr. James Hatcher of Baton Rouge, Louisiana, for the sale of Panama City Nursing Center, Inc., to Dr. Hatcher. Throughout the negotiations Dr. Hatcher was represented by his Louisiana counsel, Mr. Donald Bradford, and by Florida counsel, Mr. Thomas Turner. The agreement required an earnest money deposit of $10,000.00 and contained a liquidated damages clause which provided (1) if the seller defaulted on the sale, it would return the earnest money deposit and would pay an additional $10,000.00 as liquidated damages to the purchaser; and (2) if the purchaser defaulted, the seller would retain the $10,000.00 earnest money deposit as liquidated damages. The agreement further provided that the purchaser would have the right to inspect the roof and the heating, ventilation and air conditioning equipment prior to the closing. In addition, the seller warranted that, to the best of seller's knowledge, the property was in good repair.
Pursuant to the agreement, Dr. Hatcher had the roof of the nursing home facility inspected. This inspection revealed that one portion of the roof was in very poor condition. The estimated cost of repair submitted to Dr. Hatcher was $43,500.00. This report and repair cost estimate was forwarded to Mr. Langley. Dr. Hatcher attempted to negotiate a sharing of the costs of the roof repair, but Mr. Langley's position was that the property was for sale "as is." Following failure of any agreement concerning the roof repair costs, Dr. Hatcher agreed to accept the nursing home in an "as is" condition.
At about the time Dr. Hatcher was preparing to close the sale, Mr. Langley returned the earnest money deposit. On advice of Mr. Bradford, his Louisiana counsel, Dr. Hatcher sent the Langley check (representing the earnest money deposit) to Bradford who, in turn, forwarded the check to Mr. Turner in Florida, with directions that the check would be retendered to Langley  since Dr. Hatcher intended to go forward with the agreement. Mr. Turner did not retender the check because he [Turner] received a letter from Mr. Langley which stated that the Hatcher/Panama City agreement was terminated. When the check was returned to Dr. Hatcher a second time, he deposited it, on advice of counsel, allegedly in order to mitigate damages.
Subsequent to negotiation of the check which represented the return of his earnest money deposit, Dr. Hatcher filed a suit seeking specific performance of the contract. Panama City Nursing Center, Inc., moved for summary judgment alleging (1) the negotiation of the earnest money deposit constituted a rescission of the contract as a matter of law, and (2) the negotiation of the earnest money deposit constituted an accord and satisfaction as a matter of law. The trial court granted appellee's motion for summary judgment, holding that Dr. Hatcher's "acceptance and negotiation of the check returning the earnest money deposit constituted a rescission of the contract as a matter of law, and terminated all obligations of the parties under the contract."
Research has not disclosed a Florida case which holds, as the trial court did in this case, that acceptance and negotiation of the return of an earnest money deposit *290 constitutes a rescission as a matter of law, nor have the parties herein cited such a case. Nevertheless, there is a general principle of law that parties to a contract may stipulate what the consequences of a breach shall be and if the stipulation is reasonable, it will control and exclude all other consequences. Greenstein v. Greenbrook, Ltd., 413 So.2d 842 (Fla. 3d DCA 1982); 11 Fla.Jur.2d Contracts § 220 (1979). In Dillard Homes, Inc. v. Carroll, 152 So.2d 738 (Fla. 3d DCA 1963), the court held that where a contract fixed the deposit as liquidated damages in the event of a default by the purchaser, retention of the deposit by the seller would be the exclusive remedy. So long as a limitation of remedy provision in a contract is "mutual, unequivocal and reasonable," the limitation has been upheld by the courts of this state. Greenstein, at 844. See also: Black v. Frank, 176 So.2d 113 (Fla. 1st DCA 1965).
In the case here under review, the parties expressly limited damages to $10,000.00 in the event of the breach of either party, with the additional proviso of return of earnest money to the purchaser in event of seller's default. Although the contract does not provide that specific performance would not be available in the event of breach, it does provide expressly that should "Purchaser's actual damages exceed TEN THOUSAND AND NO/100 ($10,000) DOLLARS, Purchaser is limited to the amount of $10,000.00 and shall apply such amount in satisfaction of Purchaser's claim." The contract expressly limits the seller's damages "to the amount of the earnest money deposit," i.e. $10,000.00.
In light of the "well established rule that trial court decisions are presumptively valid and should be affirmed, if correct, regardless of whether the reasons advanced are erroneous," we find that the trial court did not err in granting defendant/appellee's motion for summary judgment on the claim for specific performance. Vandergriff v. Vandergriff, 456 So.2d 464 (Fla. 1984); 3 Fla.Jur.2d Appellate Review § 296 (1978).
With regard to the second point raised in this appeal, we reject appellant's argument that he is entitled to specific performance of the contract because the seller allegedly acted in bad faith. The record reflects that appellant was represented by counsel at all steps of contract negotiation and execution. The contract contains a "mutual, unequivocal and reasonable" limitation of damages provision in the event of breach of either party. There is nothing in this record that suggests unequal bargaining position of the parties. We find no error in the trial court's rejection of appellant's claim for specific performance based on the seller's bad faith.
We do find the trial court erred in awarding summary judgment on the Count III issue of damages. The contract provided that in the event of seller's breach, the buyer was entitled to a return of his earnest money deposit and an additional $10,000.00 as payment of liquidated damages. Since there is still an issue as to which party breached the agreement, we reverse and remand on point three, with directions to the trial court to make a determination regarding breach. If the trial court determines that the seller breached the agreement, the trial court shall enter an order directing the seller to pay $10,000.00 as liquidated damages.
Affirmed in part, reversed in part and remanded with directions.
WIGGINTON and BARFIELD, JJ., concur.