145 So.2d 770 (1962)
Sam PAPPAS, Appellant,
v.
Sylvia DERINGER, a/k/a Sylvia Deringer Leon, and Edward Leon, Her Husband, Appellees.
No. 61-615.
District Court of Appeal of Florida. Third District.
October 23, 1962.
Bolles & Prunty, Miami, for appellant.
Anderson & Nadeau, Miami, for appellees.
Before PEARSON, TILLMAN, C.J., and HORTON and BARKDULL, JJ.
PEARSON, TILLMAN, Chief Judge.
The plaintiff appeals from a final decree dismissing his complaint which was entered after testimony was presented by both parties but prior to the completion of the final hearing. The complaint prayed for a declaration of plaintiff's and defendants' rights under a lease agreement between them and also asked for an accounting of certain funds. In addition, plaintiff sought a court order that the security deposit held by defendants *771 be returned after deducting therefrom the amount of actual damages. The position of the appellee-lessor is that the security deposit was properly forfeited by the lessee upon breach of the lease agreement. The parties in this cause have considered the decree as a declaration that the security deposit was properly forfeited, and we will so consider it.
The parties entered into a lease involving the rental of certain property known as the Montgomery Motel located on Miami Beach. The lease was for a period of five years and provided for an annual rental of $32,500.00, payable $8,125.00 on the first day of January, 1959, and a like sum on the first day of February, March and April, 1959, and similar payments during each calendar year thereafter for the term of the lease.
The lease contained the following provision for a security deposit:
"* * * The Lessee does hereby agree to pay unto the Lessor a security deposit of Thirty-Two Thousand Five Hundred ($32,500.00) Dollars as follows: Twenty-One Thousand Five Hundred ($21,500.00) Dollars at the time of the ensealing and delivery of these presents, and thereafter on August 15, 1958 the sum of Three Thousand ($3,000.00) Dollars, on December 15, 1959 the sum of Four Thousand ($4,000.00) Dollars, and on February 15, 1959 the sum of Four Thousand ($4,000.00) Dollars. Said sum of $32,500.00 to be held as security for the performance of the covenants of this lease, and is to be refunded to the Lessee on the following basis:
 $8,125.00 on January 8, 1963;
 $8,125.00 on February 8, 1963;
 $8,125.00 on March 8, 1963,
 and the balance of
 $8,125.00 on April 8, 1963."
* * * * * *
"(f) the security deposit hereinbefore referred to shall not bear interest and the Lessor may commingle said deposit with their own funds. That the said security deposit shall never be applied as rent, nor shall the Lessee be or become entitled to any waiver of default or extension of time of the occupancy accruing to the Lessee hereunder by reason of the making of such security deposit. If this lease is cancelled by the Lessor because of the Lessee's default, before the Lessee becomes entitled to receive a refund of the security deposit, then the Lessor may at their option declare the said security deposit as liquidated and agreed damages."
The plaintiff-lessee failed to make the rental payment on March 1, 1959, and on April 5th the lessee was removed from the premises in compliance with a statutory landlord and tenant action. In September, 1959, the lessee filed the instant action seeking, among other things, the return of the security deposit less any actual damages.
Appellant urges error because of the chancellor's failure to declare the forfeiture of the security deposit a penalty. If the chancellor had so found, he presumably would have proceeded with the requested accounting and ordered the return to the lessee of that portion of the security deposit remaining after deducting damages proved by the lessor. In this connection, appellant points out that the lease provision as to the security deposit did not automatically forfeit the security deposit upon lessee's default and cancellation of the lease, but gave the lessor an option to declare the security deposit as liquidated and agreed damages. The specific provision referred to provides:
"If this lease is cancelled by the Lessor because of the Lessee's default, before the Lessee becomes entitled to receive a refund of the security deposit, then the Lessor may at their option declare the said security deposit as liquidated and agreed damages." [Emphasis supplied.]
Ignoring for the moment the option of the lessor to declare the security deposit as liquidated *772 damages, under the tests laid down in Hyman v. Cohen, Fla. 1954, 73 So.2d 393, the deposit held by the lessor cannot be characterized as a penalty. This is true because the basic principles discussed in the Hyman case are clearly applicable to this case. First, the damages consequent upon a premature termination of the lease by the lessor were not readily ascertainable. Second, the sum to be forfeited is not so grossly disproportionate to any damages that might reasonably be expected to follow from a premature termination of the lease as to show that the parties could have intended only to induce full performance thereunder rather than to liquidate the damages.[1] From a reading of the factual background of the two cases it is to be noted that we are dealing with the same kind of lease and the same type of property.
We now turn to a discussion of what effect the option granted the lessor in the lease in this cause "* * * to declare the said security deposit as liquidated and agreed damages." has upon delineating the deposit as liquidated damages or penalty. In Stenor, Inc. v. Lester, Fla. 1951, 58 So.2d 673, a case involving the return of a security deposit, the Supreme Court discussed the lease there involved as follows:
"One other provision in the lease here tends toward an indication of a penal intention. The lease gave the lessor the option to retain the deposit as liquidated damages or to apply it pro tanto against his actual damages upon breach by the lessee. This is hardly distinguishable from Caesar v. Rubinson, 1903, 174 N.Y. 492, 67 N.E. 58, 59, where the lease provided that `said tenants shall deposit * * * one thousand dollars * * * as security for the faithful performance of this agreement * * * and in case of any breach thereof * * * said amount shall be paid and retained by said landlords as liquidated damages for such breach, but in case the actual damages * * * shall be greater than said sum * * * said sum shall be applied on account of such damage * * *.' The court held the deposit a penalty on the ground that this lack of mutuality indicated a penal intention as well as on the ground that actual damages were capable of ascertainment and the stipulated sum was disproportionate thereto. The option granted the lessor herein to retain the deposit as liquidated damages or apply it pro tanto against actual damages on lessee's default is the same."
Returning to the provisions of the lease now under consideration, what is the effect of the option of the lessor? If the lessor failed to exercise his option, the lessee would be entitled to receive all of the unrefunded deposit; but he would at the same time be liable for the actual damages. It stands to reason that the option would be exercised unless the actual damages were greater than the security deposit. Thus the lessee is in the position of being liable to lose the security deposit or pay the actual damages, whichever is greater. We think that this option destroys the mutuality of the agreement as to prospective damages as effectively as the option in the Stenor case to retain the deposit as liquidated damages or to apply it pro tanto against his actual damages upon breach by the lessee. The result is the same, for in an action to recover the unforfeited security deposit the lessee would be met with a compulsory counterclaim for an amount greater than the security deposit.
In Glynn v. Roberson, Fla. 1952, 58 So.2d 676, the Supreme Court applied the holding in the Stenor case and noted that in the Glynn case, as well as the Stenor case, there was an option in the lessor to retain the deposit and apply it pro tanto to actual damages.
In Kanter v. Safran, Fla. 1953, 68 So.2d 553, the court held that the lease affirmatively showed that the parties did not intend *773 the security deposit as liquidated damages for a cancellation of the lease because the lease stated that the lessors "may call upon the lessee to respond for any existing damages should the actual damages exceed the amount of the security fund * * *."
It appears from each of the cases cited that an option granted to the lessor to either take the stipulated amount (security deposit) as damages or to refuse to be limited by that amount and thus become entitled to a greater amount of damages, destroys the character of the forfeiture as agreed damages and the forfeiture becomes a penalty. Therefore we hold that the forfeiture of the security deposit in the instant case is a penalty and the chancellor erred in failing to so decree.
Having reached the conclusion that the decree of dismissal must be reversed upon appellant's first point, it is not necessary to proceed further. The appellees should be permitted to retain only so much of the security deposit as they can prove as actual damages.
Accordingly, the final decree is reversed and the cause remanded for further proceeding consistent herewith.
Reversed and remanded.
NOTES
[1] See Stuco Corp. v. Gates, Fla.App. 1962, 145 So.2d 527.