541 So.2d 1267 (1989)
Mervin Stetson LANGFORD, et al., Appellants,
v.
ROTECH OXYGEN & MEDICAL EQUIPMENT, INC., Appellee.
No. 88-508.
District Court of Appeal of Florida, Fifth District.
March 16, 1989.
As Modified on Grant of Rehearing April 27, 1989.
Albert C. Simmons, Cedar Key, for appellants.
Tucker H. Byrd, of Winderweedle, Haines, Ward, & Woodman, P.A., Orlando, for appellee.
SHARP, Chief Judge.
Langford and his company, Tri-County Medical, Inc., appeal from a temporary injunction issued against them.[1] The appellants argue that the findings of the trial judge, as well as the evidence adduced at the injunction hearing, demonstrate no possible legal basis upon which to sustain the injunction. We agree.
Langford was employed by Rotech Oxygen and Medical Equipment, Inc. for approximately five years. Rotech sold and rented medical equipment to customers needing it in their homes. The rental customers were the most important segment *1268 of Rotech's business. Wheelchairs, hospital beds, oxygen tanks, equipment, and the like, were delivered to customers in their homes, and rented on a month-to-month basis. Ninety percent of Rotech's business came through referrals from medical doctors. Information concerning the customers was also primarily gathered from physicians.
Langford decided to leave Rotech and join forces with a competitor to start a competing medical supply business in part of the same area serviced by Rotech, where Langford lived and worked. When Rotech learned of Langford's plans, he was abruptly terminated.
The new business, Tri-County, solicited some five customers Langford had known before, and they switched from Rotech. There was no proof that Langford took any customer lists or information from Rotech, nor does it appear to us that such lists were so exclusive, or the information contained in the lists so difficult to obtain, that they would be properly classified and protected as "trade secrets." Nor was there any proof that Langford was bound by any non-compete contract with Rotech.
The temporary injunction prohibited Langford from using any of Rotech's customer lists, should he ever obtain them, although the court expressly found that he did not have any such material. Further, the court went on to enjoin Langford from seeking to solicit any of Rotech's present month-to-month customers either directly, or through their physicians or nurses. It further forbid Tri-County and Langford from obtaining any business from Rotech's current customers for the indefinite future.
In seeking a temporary injunction, the moving party must generally show (1) he will suffer irreparable harm because of the unavailability of an adequate remedy at law; (2) he has no adequate remedy at law; (3) he has a clear legal right[2] or interest in the subject matter of the suit. See Heavener, Ogier Services, Inc. v. R.W. Florida Region, Inc., 418 So.2d 1074 (Fla. 5th DCA 1982). Russell v. Florida Ranch Lands, Inc., 414 So.2d 1178 (Fla. 5th DCA 1982). The establishment of a clear legal right to the relief requested is an essential requirement prior to the issuance of a temporary injunction. Reinhold Construction, Inc. v. City Council for the City of Vero Beach, 429 So.2d 699 (Fla. 4th DCA 1983). This element is lacking in this case. Further, a temporary injunction is an extraordinary remedy which should be granted sparingly and only after the moving party has alleged and proven facts entitling it to relief. Contemporary Interiors, Inc. v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980); Jennings v. Perrine Fish Market, Inc., 360 So.2d 434 (Fla. 3d DCA 1978).
We find no clear legal right or basis in this case for the issuance of the temporary injunction. Rotech sought to establish two grounds for relief: appropriation of trade secrets (customer lists) and tortious interference with a contractual or business relationship. Regarding the first ground, the trial judge expressly found there was no evidence that Langford took any customer information lists from Rotech. Clearly then, there should have been no injunction issued. Heavener; Russell; Playpen South, Inc. v. City of Oakland Park, 396 So.2d 830 (Fla. 4th DCA 1981). Also, it does not appear that the kind of information concerning customers which Langford compiled from physicians consists of trade secret material. See Blackstone v. Dade County Osteopathic Clinic, 511 So.2d 1050 (Fla. 2d DCA 1987), rev. den., 523 So.2d 576 (Fla. 1988).
Nor is there any support in this record to conclude Langford or Tri-County were engaged in the tort of intentional interference with Rotech's business or contracts. Competition for business by a competitor is not an actionable interference, even if intentional. Wackenhut Corporation v. Maimone, 389 So.2d 656 (Fla. 4th DCA 1980), rev. den., 411 So.2d 383 (Fla. 1981). The evidence established that at best seven customers *1269 of the approximately fifty Rotech then claimed, were contacted by Langford and five switched to his new company. Langford knew all of these customers, or their families personally. This kind of competition for business is to be expected from former employees who are not bound by a non-compete contract. It is not actionable. Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. 2nd DCA 1958).
Accordingly, we quash the temporary injunction issued in this cause.
COBB and COWART, JJ., concur.
NOTES
[1] This is a non-final order appealable under Florida Rule of Appellate Procedure 9.130(a)(3)(B).
[2] Clear legal right means that the plaintiff shows a substantial likelihood of success. Oxford International Bank and Trust, Ltd. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 374 So.2d 54 (Fla.3d DCA 1979), cert. dismissed, 383 So.2d 1199 (Fla. 1980).